## CULLEY & SON v. EDWARDS, ADX.

1. PROBATE COURT: *Jurisdiction: Partnership accounts.*
   The probate court has no jurisdiction to adjust the partnership accounts between a deceased and surviving partner. But when their accounts have been settled and a balance struck against the partner who afterwards dies, the probate court may render judgment for this balance against his estate.

2. PARTNERSHIP:  *Test of.*

The rule that participation in the profits of a business was the test of
partnership as to liability to creditors, has been abandoned in England
and generally in America; and now the test is whether the business
has been carried on in behalf of the person sought to be charged as a
partner; *i. e.*, did he stand in the relation of principal towards the os-
tensible traders by whom the liabilities were incurred and under whose
management the profits have been made; but as between the parties
themselves, the test has always been their actual intent.

APPEAL from *Miller* Circuit Court.
Hon. C. E. MITCHEL, Circuit Judge.

*O. D. Scott* for appellant.

1.   The probate court is a court of record, a superior
court, and the presumption is in favor of the regularity
and vadility of its proceedings. (*11 Ark., 529; 19 Ib., 485;
18 Ib., 292.*)   Even if the agreement constitutes a partner-
ship it will be presumed that a settlement had been made
and a balance struck, and appellants could sue. *Parsons
on Part., 278.*

2.   As appellants were to be repaid the sum *at all events*,
and all losses were to fall on appellee's intestate, the mere
fact that appellants were to share in the profits did not
constitute a partnership.   The old English rule that shar-
ing in the profits is conclusive evidence of a partnership
has exploded in England and in nearly all of the States.
*13 R. I., 27; S. C. 43 Am. Rep., 3; Cox v. Hickman, 8 H. L;
83 Pa. St., 286; 28 Oh. St., 319; Smith v. Knight, 71 Ill.; 8
Sawy., 286; 7 Ia., 435; 5 Sneed, 721; 53 N. H., 276; 5 Mees &
W., 518; Davis, ex parte, 4 De Gex, F. & J.; 76 N. Y., 55; 32
Am. Rep., 267; 12 Conn,, 69.*

The contract itself, as between the parties, determines
the partnership relation.   *Story on Part., secs. 3, 4, 5, 6;* see
also *2 Ark., 346; 4 Ib., 425; 6 Ib., 191; 22 Ib., 381; 25 Ib.,
327; 26 Ib., 154; 39 Ib., 280.*

*A. B. & R. B. Williams* for appellee.

The contract created a partnership. Edwards was to take the money, put it into merchandise, or other safe and profitable investment, he and Culley *to share the profits* and accounts, etc., which constituted a partnership, *inter sese.* (*Story on Part.*, secs. *2, 23, 27, 32, 33, 34; 3 Kent Com.*, Lect. *XLIII, sec. 24; 16 Johns., N. Y., 33.*) An agreement to share in the profits is sufficient. *45 N. Y., 797; 27 Conn., 250; 58 N. Y., 272.*

The surviving partner should have taken possession of the assets and wound up the business, and the probate court had no jurisdiction. *Const., art. 7, sec. 34; Hempst., 560; Willard's Eq., p. 718; 1 Paige, 393 ; 9 Ib., 178; 3 Black. Com., marg., p. 437.*

SMITH, J. In the year 1866 the appellants lent to the intestate of the appellee a sum of money. Four years later, said intestate executed the following instrument: " $9,491.77.

" Received, Rondo, Lafayette County, Arkansas, April 15, 1870, of L. T. Culley & Son nine thousand four hundred and ninety-one dollars and seventy-seven cents, that being the amount which I did invest in merchandise during the year 1866, which moneys I promise and bind myself to keep invested and employed in merchandise or some other legitimate business which may be agreed upon by the parties interested, continuously until the first day of May (1886), eighteen hundred and eighty-six, at which time I promise and bind myself to pay the said L. T. Culley & Son or their legal representatives, heirs or assigns, the said sum of nine thousand four hundred and ninety-one dollars and seventy-seven cents, together with the one-half of the net earnings, which shall have arisen from the employment of said moneys and moneys arising

therefrom, from the commencement of business the first day of May, 1866, it being a term of twenty years.

"Witness my hand and seal the day and date above.

"THOS. J. EDWARDS. [L. S.]"

Edwards died in 1877 and Culley & Son exhibited their claim in the probate court against his estate, and after a contest recovered judgment for the principal sum specified in said receipt and one-half of the net earnings of the business carried on by Edwards, total, $19,885.60. This judgment was acquiesced in by the administrator, and some partial payments have been made on account thereof. The administrator *de bonis non* of Edwards now petitions the Circuit Court to quash said judgment of allowance, on certiorari, on the ground that the original parties to these transactions were partners, and the probate court had no jurisdiction to settle the accounts of a deceased and surviving partners. And the Circuit Court being of opinion that the demand of Culley & Son, based upon the writing copied above, showed conclusively upon its face that it grew out of partnership transactions, granted the petitioner the relief prayed for.

It may be conceded, for the purposes of this appeal, that if Culley & Son and Edwards were partners, the probate court was without jurisdiction to adjust their accounts. See, on this point, *Halderman v. Halderman, Hempst., 559; Nelson v. Green, 22 Ark., 547; Tiner v. Christian, 27 Ib., 306; Constitution of 1874, art. 7, secs. 15 and 34.* Still, in the trial of the cause in the probate court, it may have been shown that their accounts had been settled and a balance struck; in which case one partner could have sued the other for the amount found to be due. And we must indulge the presumption in favor of the regularity and validity of its proceedings, which is accorded to all courts of record. *Borden v. State, 11 Ark., 529.*

Yet we go further and say that, even if no settlement was had in Edwards' lifetime, the claim of Culley & Son, as presented to the probate court, does not conclusively import that it arose out of a partnership relation. It is true that, besides the return of the original loan, they are to have one-half of the net profits of the business to be carried on by Edwards, and that this implies the right to an accounting and an inspection of the books. But beyond this they stipulated for no control over the business, except the right to be consulted in the event of a change from one line of business to another.

It used to be thought that a participation in profits was the decisive test of a partnership, so far as liability to creditors was concerned. The rule was so laid down in *Waugh v. Carver*, *2 H. Blackstone.*, *235*, decided in 1793. That was a case where two ship agents, carrying on business at different points, agreed to allow each other certain portions of each other's profits, but it was stipulated that each should be answerable for his own losses. And it was held that both parties to the agreement were bound for the debts of each. The decision is placed upon the ground that a participant in profits takes from creditors a part of that fund which is the proper security for the payment of their debts. It was thus established that persons who share profits incur to third parties all the liabilities of partners, although no partnership was ever in fact contemplated by the persons themselves. And such continued to be the rule both in England and America, until the year 1860, when it was overthrown by the case of *Cox v. Hickman*, *8 H. L. C.*, *260*, and the final test declared to be whether the business has been carried on in behalf of the person sought to be charged as a partner; *i. e.*, did he stand in the relation of the principal towards the ostensible traders, by whom the liabilities have been incurred, and

*Test of partnership.*

under whose management the profits have been made? This is the settled rule in England, and has been very generally adopted in this country. *Bullen v. Sharp, 1 L. R. C. P., 86; Mollwo v. Court of Wards, 4 Moak's Eng. Rep., 121 ex parte Tenant, S. C. 22 Moak's Eng. Rep., 831; Eastman v. Clark, 53 N. H., 276; S. C. 16 Am. R., 192; Smith v. Knight, 71 Ill., 148; S. C. 22 Am. R., 94; Richardson v. Hughitt, 76 N. Y., 55; S. C. 32 Am. R., 267; Boston, etc., Smelting Co. v. Smith, 13 R. I., 27; S. C. 43 Am. R., 3; Hart v. Kelley, 83 Pa. St., 286; Beecher v. Bush, 45 Mich., 188; Harvey v. Childs, 28 Ohio St., 319.*

But while the old rule prevailed that participation in the profits was conclusive as to third persons, and before the introduction of the modern principle that it is a mere circumstance to show the relation of principal and agent between the persons taking the profits and those carrying on the business, the test of partnership, as between the parties themselves, has always been their actual intent. Thus, *in Elgie v. Webster, 5 M. & W., 518,* decided in 1839, W advanced to E £59 for the purpose of perfecting certain inventions. If these proved to be profitable, W was to have one-third of the profits in consideration of his advance, and there was an express agreement on the part of E to pay back the advance at all events. E, when sued for the debt, objected that the effect of the agreement was to create a partnership, and consequently to prevent their suing each other in respect of the matters contained in the agreement. But the court held that the express promise to repay the £59 at all events, took away the objection of that sum forming a part of any partnership fund, so as to constitute a partnership.

Here Edwards bound himself to refund the principal sum that was borrowed in any contingency, and the stipulation for a division of the profits is merely a mode for

compensating Culley & Son for the use of their money. The share of the profits they take not as partners, but on account of the debt due them by Edwards.

It is evident from the fact that Culley & Son suffered the assets to pass into the hands of an administrator, and contented themselves with proving their claim, that they looked upon Edwards as their debtor and not as their partner. By virtue of the right of survivorship they would have had a right to possess themselves of the assets, and to wind up the concern.

Judgment reversed and cause remanded, with directions to dismiss the petition.